STATE v. MARTIN

[228 N.C. App. 687 (2013)]

---

STATE OF NORTH CAROLINA
v.
MATTHEW BRYANT MARTIN

No. COA12-1574

Filed 6 August 2013

**Confessions and Incriminating Statements—post-Miranda confession—involuntary—Siler presumption**

The trial court erred in a second-degree rape case by partially denying defendant's motion to suppress. Defendant's pre-*Miranda* confession was obtained under circumstances rendering it involuntary. Furthermore, the Court of Appeals imputed the same prior influence to the post-*Miranda* confession because the State failed to overcome the presumption set forth in *State v. Siler*, 292 N.C. 543.

Appeal by defendant from judgment entered 5 July 2012 by Judge Mark E. Powell in Polk County Superior Court. Heard in the Court of Appeals 4 June 2013.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders Jon H. Hunt and Benjamin Dowling-Sendor, for defendant.*

ELMORE, Judge.

On 5 July 2012, Matthew Bryant Martin (defendant) pled guilty to attempted second-degree rape and was sentenced to 44 to 62 months imprisonment. In his plea, defendant reserved his right to appeal the trial court's partial denial of his motion to suppress. After careful consideration, we order a new trial.

## I. BACKGROUND

Defendant met the victim (T.H.) online through the internet website www.myyearbook.com. On 14 November 2011, defendant, T.H., and a friend went to McDonald's and a video game store. Upon returning to T.H's residence, T.H.'s friend left, and defendant and T.H. went to her bedroom and watched videos on the computer until T.H. fell asleep. Defendant slept on the floor of T.H.'s room that evening. The following morning, defendant got into T.H.'s bed, where she was asleep on her stomach, pulled down her shorts and underwear, and had sexual intercourse with her. T.H. did not wake during this incident. Instead, she awoke after defendant was dressed. T.H. and her friend took defendant home.

Later that same day, several of T.H.'s friends assaulted defendant after learning that he had intercourse with her. They punched him, kicked him, and beat him with a metal wrench. Defendant reported the assault to the Polk County Sheriff's Office. When the police began investigating the assault, T.H. told them of the alleged rape. As a result, defendant was arrested on 15 November 2011 for an unrelated probation violation; his use of www.myyearbook.com violated the terms of his probation for a prior conviction of misdemeanor sexual battery. At the time of this arrest, defendant was twenty-one years old.

On 8 December 2011, while in custody for the probation violation, Captain Randall Hodge of the Polk County Sheriff's Office took defendant out of his cell to interrogate him regarding the alleged rape. Captain Hodge led defendant into an interrogation room; his arms and legs were cuffed and shackled, and he was not told that he was free to leave. Captain Hodge informed defendant that T.H. "took a polygraph and she passed." In fact, T.H. had done neither. Additionally, Captain Hodge said that defendant could "help himself" and "to make things easier for you at this point . . . we can maybe compromise or work something out with a – a plea arrangement or anything like that[.]" Defendant confessed to having sexual intercourse with T.H. while she was asleep. After the confession, Captain Hodge stated: "What I want to do, just to cover our bases as much as I can, I can't promise you no deals with the DA. . . .

The only thing I can tell the District Attorney is you cooperated with me. Okay? But I'm going to go ahead and read you your Miranda rights. You are not under arrest at this point." Captain Hodge removed defendant's restraints and read him his *Miranda* rights. Defendant waived his rights and agreed to speak with Captain Hodge further about the incident.

Thereafter, Captain Hodge continued with the second part of the interrogation: "Let me . . . I'm going to recap[.]" Defendant confessed once more, telling Captain Hodge that he pulled T.H.'s shorts down to her knees and "inserted my penis in her vagina." To defendant's knowledge, T.H. did not wake during the intercourse.

Defendant's counsel moved to suppress all statements made by defendant during the 8 December 2011 interrogation. Judge Powell entered an order partially granting defendant's motion, concluding that any statement made by defendant to Captain Hodge prior to defendant being advised of his Miranda rights was suppressed. Thus, the trial court deemed defendant's post-Miranda testimony admissible. Defendant now appeals.

## II. ANALYSIS

[1] Defendant argues that the trial court erred in denying his motion to suppress on the basis that his confession was involuntary. Defendant specifically contends that he was interrogated in a two-stage process whereby Captain Hodge persuaded defendant to confess prior to having been Mirandized, thus rendering his first confession involuntary. As such, Captain Hodge then delivered the Miranda warnings and had defendant repeat his confession, which, defendant asserts, was also involuntary given the circumstances. We agree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law, however, are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

"The determination of whether a defendant's statements are voluntary and admissible is a question of law and is fully reviewable on appeal." *State v. Maniego*, 163 N.C. App. 676, 682, 594 S.E.2d 242, 246 (2004) (quotation and citation omitted). "The voluntariness of a confession is determined by the totality of the circumstances." *State v. Gainey*,

355 N.C. 73, 84, 558 S.E.2d 463, 471 (2002) (quotation and citation omitted). The requisite factors in the totality of the circumstances inquiry include: 1) whether the defendant was in custody at the time of the interrogation; 2) whether the defendant's *Miranda* rights were honored; 3) whether the interrogating officer made misrepresentations or deceived the defendant; 4) the interrogation's length; 5) whether the officer made promises to the defendant to induce the confession; 6) whether the defendant was held incommunicado; 7) the presence of physical threats or violence; 8) the defendant's familiarity with the criminal justice system; and 9) the mental condition of the defendant. *See State v. Cortes-Serrano*, 195 N.C. App. 644, 655, 673 S.E.2d 756, 763 (2009). However, "[t]he presence or absence of one or more of these factors is not determinative". *State v. Greene*, 332 N.C. 565, 579, 422 S.E.2d 730, 738 (1992) (citation omitted).

> [W]here a confession has been obtained under circumstances rendering it involuntary, a presumption arises which imputes the same prior influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence. The burden is upon the State to overcome this presumption by clear and convincing evidence.

*State v. Siler*, 292 N.C. 543, 551, 234 S.E.2d 733, 739 (1977) (quotation and citation omitted). "This rule which predates the *Miranda* decision arises out of a concern that where the first confession is procured through promises or threats rendering it involuntary as a matter of law, these influences may continue to operate on the free will of the defendant in subsequent confessions. *Id.*

In the case *sub judice*, defendant does not specifically challenge the trial court's findings of fact; instead he argues that given the totality of the circumstances, his confession was involuntary. The trial court found that "the statements made by the Defendant both before and after his Miranda rights being advised were not involuntary[.]" We disagree. Furthermore, we conclude that the presumption set forth in *Siler* is applicable here. As such, the circumstances and tactics that Officer Hodge employed to induce defendant's first confession shall be imputed to defendant's post-Miranda confession.

In considering the totality of the circumstances, we first note that defendant was under arrest for violating his probation when Captain Hodge questioned him. Defendant was moved from his cell to an interrogation room; his arms and legs were cuffed and shackled, and

"[a]ny reasonable person would not feel free to leave the room." Thus, the trial court's finding that defendant was in custody is supported by competent evidence.

Second, Captain Hodge made misrepresentations and/or deceptive statements to defendant. He began defendant's interrogation with a deceptive statement, telling defendant that T.H. "took a polygraph and she passed," when she had done neither. Officer Hodge then asked, "do you want to tell me what happened that night now, now that I know[?]" This statement is misleading because it implied that Captain Hodge had irrefutable evidence against defendant.

Third, Captain Hodge made promises to the defendant to induce the confession. An officer's promises are considered improper inducement, if he "promise[s] relief from the criminal charge to which the confession relates, and [does] not merely provide the defendant with a collateral advantage." *Gainey*, 355 N.C. at 84, 558 S.E.2d at 471. "[A] suggestion of hope created by statements of law enforcement officers that they will talk to the District Attorney regarding a suspect's cooperation where there is no indication that preferential treatment might be given in exchange for cooperation does not render inculpatory statements involuntary." *State v. Bordeaux*, 207 N.C. App. 645, 654, 701 S.E.2d 272, 278 (2010). However, if a confession was the product of improperly induced hope or fear, it is involuntary. *See Gainey*, 355 N.C. at 84, 558 S.E.2d at 471.

Here, Officer Hodge told defendant, "we can maybe compromise or work something out with a -- a plea arrangement or anything like that[.]" This statement suggests that Captain Hodge was in a position to negotiate a plea bargain on defendant's behalf, which was a false promise. Additionally, Captain Hodge's offer of a possible plea arrangement is a promise of relief from a criminal charge–it is not an offer of mere collateral advantage. Moreover, after Captain Hodge mentioned a possible plea arrangement, defendant stated, "[t]hat would be wonderful. I mean, if I can do that, I mean, I have a plan to where I have a -- my girlfriend that I can go down to Georgia, Gainesville, Georgia." Given defendant's reaction, we conclude that his confession was the product of improperly induced hope or fear. *See Gainey, supra.*

Lastly, we find that defendant's impaired mental condition may have contributed to the involuntariness of his confession. Defendant suffers from bipolar disorder, Tourette's Syndrome, ADHD, night terrors, and an anxiety disorder. As such, he takes at least three prescription medications daily. Defendant's mother testified that defendant's behavior on

the day of the interrogation led her to suspect that he was not receiving proper doses of his medication, and blood work confirmed that the level of one of his medications (Depakote) was below the normal range.

Given the totality of the circumstances: 1) defendant was in custody, 2) Captain Hodge made deceitful statements during the interrogation, 3) Captain Hodge made promises to defendant that improperly induced hope or fear, and 4) defendant may have had an impaired mental condition during questioning, we conclude that defendant's pre-Miranda confession was obtained under circumstances rendering it involuntary. Furthermore, we impute the same prior influence to the post-Miranda confession because the State failed to overcome the presumption set forth in *State v. Siler, supra*. Accordingly, we conclude that both the pre-Miranda and post-Miranda confessions were involuntarily made; the trial court erred in denying defendant's motion to suppress in its entirety. After careful consideration, we order a new trial.

New trial.

Chief Judge MARTIN and HUNTER, JR., Robert N., concur.